UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


FAROULH DORLETTE,                :
        Plaintiff,               :
                                 :
    v.                           :    Case No. 3:10cv615(AWT)
                                 :
ANGEL QUIROS, et al.,            :
        Defendants.              :


**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #68]**

In this civil rights action, the plaintiff, Faroulh
Dorlette, asserts Eighth Amendment claims for use of excessive
force, denial of proper medical care and harassment/retaliation
against defendants Angel Quiros, Michael Lajoie, Stephen Faucher,
David Butkiewicus, Paul Germond, William Brunette, Alejandro
Correa, Jeffrey Duclos, Sean Guimond, Todd Reale, Shannon
Lawrence, Dominic Gionfriddo, Richard Zina, Scott Prouty, Jason
Cahill, Alcides Santiago and Kathy Weiner.[1]  The defendants have
filed a motion for summary judgment.  For the reasons that
follow, the defendants' motion is being granted in part.

**I.  Legal Standard**

In a motion for summary judgment, the burden is on the
moving party to establish that there are no genuine issues of

---

[1] The court notes that the plaintiff also alleges that his
right to due process under the Fourteenth Amendment was violated.
This contention is not addressed in the Initial Review Order or
the motion for summary judgment.      .

material fact and that it is entitled to judgment as a matter of law.  See Rule 56(a), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position

will be insufficient; there must be evidence on which the jury
could reasonably find for the [plaintiff].'" Dawson v. County of
Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson,
477 U.S. at 252)).

## II.  Facts[2]

On October 23, 2009, the plaintiff was confined at Northern
Correctional Institution, a level five maximum security facility.
The plaintiff was classified as a Security Risk Group Safety
Threat Member.  At approximately 8:35 a.m., the plaintiff was
returning to his housing unit after his recreation period.
Defendants Brunetti and Correa were among the officers
supervising the inmates.

The other inmates in the group all headed toward the dayroom
door.  An altercation ensued between the plaintiff and defendants
Correa and Brunetti.  The parties dispute who instigated the
altercation.  Many correctional officers responded.  A chemical
agent was used during the effort to bring the plaintiff to the
ground and restrain him.  The plaintiff was escorted to the

---

[2]The facts are taken from the Local Rule 56(a) Statements
filed by the parties.  Six of the affidavits submitted by the
defendants and relied upon in their Local Rule 56(a) Statement,
however, are incomplete.  On November 1, 2011, the court granted
the plaintiff's motion to strike the affidavits of Todd Reale,
Sean Guimond, Jason Cahill, Kathleen Weiner, Stephen Faucher and
Jeffrey Duclos, and afforded the defendants until November 21,
2011, to file complete affidavits.  See Doc. #76.  The defendants
did not meet this deadline.  Accordingly, the court does not
consider these six affidavits.

showers and then to the medical unit for assessment.  The
plaintiff suffered an abrasion to his scalp and a contusion on
his lip, which were treated in the medical unit.  The plaintiff
disputes that these were his only injuries.

After his removal from the medical unit, the plaintiff was
placed in in-cell restraints, consisting of handcuffs, shackles
and a tether chain.  The restraints were inspected by defendants
Germond and Lawrence.  The plaintiff disputes their findings of
ample spacing between the restraints and his body.

The plaintiff remained on administrative detention, on in-
cell restraint status, pending an investigation for an alleged
assault on staff.  Department of Correction records indicate that
the plaintiff's restraints were checked every fifteen minutes.
The checks are performed by both custodial and medical staff.  At
least twice per day, medical staff examine the restraints to
ensure the skin is intact and not cut or scratched by the
restraints.  In addition, skin color is checked to ensure that
circulation is not affected by restraints that are too tight.
The plaintiff disputes the number and adequacy of these checks.

The following day, defendant Germond reviewed the
plaintiff's status by checking the restraints and speaking to
staff.  Staff reported that the plaintiff continued to be
disruptive.  Defendant Germond concluded that the plaintiff
continued to pose a threat to institutional safety and security

4

and a risk of interference with facility operations.  Defendant
Germond told the plaintiff that he would remain on in-cell
restraint status as a result of his disruptive behavior.

On October 25, 2009, defendant Germond again reviewed the
plaintiff's status.  Staff reported, and defendant Germond
observed, that the plaintiff continued to be disruptive.  The
plaintiff denies this.  Defendant Germond informed the plaintiff
that in-cell restraint status would be continued again.

The plaintiff was removed from in-cell restraint status on
October 26, 2009, after reaching the 72-hour limit for this form
of restraint.  At that time, the plaintiff was compliant and did
not pose a risk to the safety of staff or facility operations.

The plaintiff received a disciplinary report for assault.
He was found guilty following a hearing.  The plaintiff states
that he cannot recall attending the hearing.  The plaintiff also
was convicted following a criminal trial on a charge of
assaulting defendants Brunetti and Correa.  He was sentenced to a
consecutive sentence of ten years, followed by ten years of
special parole.

Defendant Zina issued the plaintiff a disciplinary report
for threats based on his conduct while on in-cell restraint
status.  Although the plaintiff denies making any threats, he was
found guilty of the charge following a hearing.

On December 10, 2009, defendant Santiago searched the

5

plaintiff's cell.  Cell searches are routinely performed to maintain institutional safety and security by locating contraband.  Correctional staff search each and every part of the cell and every item in the cell.  Several items of contraband were found in the plaintiff's cell, including a radio that had been altered, a second radio that belonged to another inmate, clothes lines, books, torn magazines and cleaning solution.  In addition, there were numerous papers attached to the light fixtures and walls in violation of prison rules.  The plaintiff was issued a disciplinary report for possession of contraband.  The charge was dismissed after the plaintiff's cellmate took responsibility for all of the items.

## III.  **Discussion**

In this action, the plaintiff claims that the defendants (1) used excessive force against him; (2) denied him necessary medical care; (3) subjected him to unconstitutional conditions of confinement for three days by restraining him in a filthy cell; (4) failed to afford him due process before placing him on restraint status; and (5) retaliated against him through verbal harassment, unnecessary cell searches, theft and issuance of false disciplinary reports.  He also includes claims for supervisory liability and conspiracy.  In the Initial Review Order, filed May 10, 2010, the court dismissed the conspiracy claims.  See Doc. #4.

6

The defendants move for summary judgment on the following grounds: (1) all claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment; (2) the defendants are protected by qualified immunity; (3) the plaintiff fails to demonstrate the personal involvement of defendants Lajoie, Quiros and Weiner; (4) the defendants did not use excessive force; and (5) the plaintiff fails to state a claim for retaliation or harassment.  The court considers each argument below.

A.    Eleventh Amendment Immunity

The defendants first argue that any claims against them in their official capacities are barred by the Eleventh Amendment. In response, the plaintiff states that he has not named any defendant in his or her official capacity.

The complaint caption clearly states that all defendants are named in their individual capacities only.  See Doc. #1 at 1. Accordingly, the defendants' motion for summary judgment on this ground is denied as moot.

B.    Personal Involvement

The defendants argue that the plaintiff fails to establish the personal involvement of defendants Lajoie, Quiros and Weiner in the incidents underlying this case.

1.    Michael Lajoie and Angel Quiros

Because the doctrine of respondeat superior is inapplicable

7

in section 1983 cases, see Blyden v. Mancusi, 186 F.3d 252, 264
(2d Cir. 1999), supervisors are not automatically liable under
section 1983 when their subordinates commit a constitutional
tort.  For many years it was well settled in this circuit that
there were five ways to demonstrate the personal involvement of a
supervisory defendant: "(1) the defendant directly participated
in the alleged constitutional violation, (2) the defendant, after
being informed of the violation through a report or appeal,
failed to remedy the wrong, (3) the defendant created a policy or
custom under which unconstitutional practices occurred, or
allowed the continuance of such a policy or custom, (4) the
defendant was grossly negligent in supervising subordinates who
committed the wrongful acts, or (5) the defendant exhibited
deliberate indifference to the rights of inmates by failing to
act on information indicating that unconstitutional acts were
occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)
(quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).
In addition, the plaintiff must demonstrate an affirmative causal
link between the supervisory official's failure to act and his
injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

    In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court
rejected the argument that "a supervisor's mere knowledge of his
subordinate's discriminatory purpose amounts to the supervisor's
violating the Constitution," concluding that "each Government

official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677.  Since Iqbal, some districts courts in this circuit have concluded that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable.  See e.g., Bellamy v. Mount Vernon Hospital, No. 07 Civ. 1801(SAS), 2009 WL 1835939 at *6 (S.D.N.Y. June 26, 2009) ("The Supreme Court's decision in Iqbal v. Ashcroft abrogates several of the categories of supervisory liability enumerated in Colon v. Coughlin.  Iqbal's active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation.  Only the first and part of the third Colon categories pass Iqbal's muster."); Bryant v. County of Monroe, No. 09-CV-6415-CJS, 2010 WL 4877799 at *3 (W.D.N.Y. Nov. 22, 2010) ("The Court ... is persuaded by the analysis of ... Iqbal ... in Bellamy.... ").  Other district courts restrict application of Iqbal to cases involving discriminatory intent. See, e.g., Delgado v. Bezio, No. 09 Civ. 6899(LTS), 2011 WL 1842294 at *9 (S.D.N.Y. May 9, 2011) ( "'It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected [in Iqbal] the argument that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'... Thus, where the claim does not require a

9

showing of discriminatory intent, the <u>Colon</u> analysis should still apply, insofar as it is 'consistent with the particular constitutional provision alleged to have been violated.'" (internal citations omitted)).  The Second Circuit has not yet addressed this issue.

This court need not determine whether <u>Iqbal</u> applies in all cases or just those involving discriminatory intent because the allegations against defendants Lajoie and Quiros are insufficient to survive summary judgment even under the <u>Colon</u> standard.

The defendants argue that the plaintiff has not alleged that either defendant personally engaged in wrongful conduct, and merely alleges formulaic statements of the elements of a claim for supervisory liability.  Thus, they contend that the plaintiff has not presented any facts to support a plausible claim of supervisory liability.  The plaintiff states that defendants Lajoie and Quiros were on notice of the violent tendencies of certain staff members through requests and grievances submitted by other inmates prior to October 23, 2009.  The plaintiff also specifically reported the October 23, 2009 incident.  Rather than take action, defendants Lajoie and Quiros denied the plaintiff's grievances.

The plaintiff alleges no facts and presents no evidence suggesting that defendants Lajoie and Quiros were notified prior to October 23, 2009, that any correctional officers had violent

10

tendencies.  Although the plaintiff notified them about the incident after it occurred, this is insufficient to establish their personal involvement.  The plaintiff has not presented evidence that either defendant had sufficient knowledge to have prevented the incident.  See Odom v. Calero, No. 06 Civ. 15527(LAK)(GWG), 2008 WL 2735868, at *7 (S.D.N.Y. Jul. 10, 2008) (holding that failure to remedy factor applies only to ongoing, hence correctable, violations).

Further, the fact that defendants Quiros and Lajoie denied his grievance appeal does not state a cognizable claim.  See Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (holding inmate had no protected liberty interest in having grievances investigated to his satisfaction).

The defendants' motion for summary judgment is granted as to the claims against defendants Quiros and Lajoie.

2.  Kathleen Weiner

The defendants argue that the plaintiff cannot demonstrate the personal involvement of defendant Weiner because she was not working on the date of the incident.  The only evidence they offer in support of this argument is defendant Weiner's affidavit.  Defendant Weiner's affidavit, however, is not notarized.  On November 1, 2011, the court granted the plaintiff's motion to strike this affidavit.  The defendants were afforded until November 21, 2011, to file a completed affidavit.

See Doc. #76.  They failed to do so.  Accordingly, the
defendants' motion for summary judgment is denied as to the
claims against defendant Weiner.

    C.   Use of Excessive Force

    The defendants contend that they did not use excessive force
against the plaintiff on October 23, 2009.  When confronted by a
disturbance, correctional officers must balance the threat the
disturbance poses to inmates, staff and others against the harm
the inmate might suffer if force is used.  This decision is made
quickly and under pressure.  When considering the use of force by
correctional officers, the court must determine "whether force
was applied in a good-faith effort to maintain or restore
discipline, or maliciously and sadistically to cause harm."
Hudson v. McMillian, 503 U.S. 1, 7 (1992) (internal quotation
marks and citation omitted).

    The court considers objective and subjective components to
an excessive force claim.  See id. at 8.  The objective component
relates to the level of physical force used against the inmate
and whether that force is repugnant to the conscience of mankind.
See id. at 9-10.  The subjective component focuses on whether the
correctional officers had a "wanton" state of mind when they were
applying the allegedly excessive force.  See id. at 8.

    An excessive force claim cannot be decided merely by
considering the extent of an inmate's injuries.  See Perkins v.

Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003) (acknowledging that claim of excessive force may be established even if the victim does not suffer serious or significant injury) (citations omitted).  Instead, the court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm.  See Hudson, 503 U.S. at 7.  Other factors to be considered are the need for use of force, the threat perceived by correctional staff and the relationship between the perceived threat and the amount of force used.  See id.  For example, an inmate who does not suffer serious or significant injury may establish a claim for use of excessive force if he can show that the force used was more than de minimus or was repugnant to the conscience of mankind and that the defendant acted with a sufficiently culpable state of mind. United States v. Walsh, 194 F.3d 37, 48-50 (2d Cir. 1999).

This approach is consistent with the view that "[e]xcessive force does not, in and of itself, establish malice or wantonness for Eighth Amendment purposes."  Romano v. Howarth, 998 F.2d 101, 106 (2d Cir. 1993); see, e.g., Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006) (stating that summary judgment should not have been granted to two officers where the inmate provided sufficient evidence to demonstrate that questions existed regarding, inter alia, whether actions of correctional staff

13

"were necessary to maintain order or were excessive reactions by
frustrated officers; and whether the amount of force used was
commensurate with the situation ... whether verbal orders or the
application of less force would have been sufficient, whether or
not a warning issued before application of the pepper spray")

"Infliction of pain that is 'totally without penological
justification' is per se malicious." Hope v. Pelzer, 536 U.S.
730, 737 (2002) (quoting Rhodes v. Chapman, 452 U.S. 337, 346
(1981)). See Roberts v. Samardvich, 909 F. Supp. 594, 604-05
(N.D. Ind. 1995) (denying summary judgment on excessive force
claims where inmate suffered 1 inch laceration which stopped
bleeding within twenty minutes, videotape of incident showed no
use of excessive force and inmate was not resisting correctional
officers; although direct evidence of malicious and sadistic
conduct was lacking, evidence could support such an inference).

The affidavits submitted by the defendants describing the
incident differ from the plaintiff's affidavit.  Both sides in
this case rely on the videotapes submitted by the defendants.[3]
The videotape captured the plaintiff lunging at a correctional

---

[3]The discs submitted with the defendants' motion for summary
judgment were in a format that was not compatible with the
court's computers.  The defendants have substituted a disc that
is compatible.  See Doc. #83.  Unfortunately, the copy of the
computer screen identifying the various views is not legible and
the time stamps referenced by the parties are not present.  The
court, however, has reviewed all of the material on the
substitute disc.

officer, presumably defendant Brunetti.  Another view shows the plaintiff struggling with correctional officers while proceeding down a hallway.  These two views are from a distance and do not clearly reveal the officer's responses to the plaintiff's conduct.  A third view shows the plaintiff being brought to the floor by several officers with more officers immediately responding.  Although this view is closer, the court cannot ascertain whether the defendants were taking protective action, as they contend, or maliciously punching the plaintiff.  Moreover, the court cannot ascertain the identify of any of the defendants from the video footage.  In light of this ambiguity, there exists a genuine issue of material fact regarding the conduct of the defendants during the incident.  Accordingly, the defendants' motion for summary judgment is being denied as to the excessive force claim.

> D.  <u>Harassment and Retaliation</u>

The defendants next contend that the plaintiff fails to state a cognizable claim for harassment or retaliation based on the December 10, 2009 cell search, the issuance of an allegedly false disciplinary report for threats, and degrading or disrespectful comments.

Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, the plaintiff must show that his actions were protected by

the Constitution or federal law and that his protected conduct
was a "substantial or motivating factor" in the alleged
retaliatory conduct.  Friedl v. City of New York, 210 F.3d 79, 85
(2d Cir. 2000).  Because claims of retaliation are easily
fabricated, the courts consider such claims with skepticism and
require that they be supported by specific facts; conclusory
statements are not sufficient.  See Flaherty v. Coughlin, 713
F.2d 10, 13 (2d Cir. 2003).  To support a claim of retaliation,
the allegedly retaliatory conduct must be such that it would
deter a similarly situated inmate of ordinary resolve from
exercising his constitutional rights.  It is not necessary that
the plaintiff himself be deterred.  See Gill v. Pidlypchak, 389
F.3d 379, 381 (2d Cir. 2004).  Any lesser conduct is de minimis
and does not support a retaliation claim.  See Dawes v. Walker,
239 F.3d 489, 493 (2d Cir. 2001).  Prisoners are required to
tolerate more serious conduct than public employees or private
citizens before stating a retaliation claim.  See id.

     The plaintiff argues that the retaliation and harassment was
in response to his alleged assault on correctional staff.  To
support a retaliation claim, the plaintiff must have engaged in
constitutionally protected activity which motivated the
retaliatory acts.  The plaintiff has no constitutionally
protected right to assault correctional staff.  Thus, he fails to
identify a constitutionally protected activity to support his

16

claims.   Thus, the plaintiff's claims for harassment and
retaliation fail.   Therefore, the defendants' motion for summary
judgment is being granted as to the claims for retaliation and
harassment.

     E.   <u>Qualified Immunity</u>

     Finally, the defendants argue that their actions with regard
to the alleged use of excessive force are protected by qualified
immunity.   Government officials performing discretionary
functions are protected from liability for civil damages unless
their conduct violated a clearly established statutory or
constitutional right of which a reasonable person would have been
aware.   <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).   The
constitutional right at issue "must be sufficiently clear that a
reasonable official would understand that what he is doing
violates that right," although the exact issue need not have been
previously decided.   <u>Anderson v. Creighton</u>, 483 U.S. 635, 640
(1987).   To establish a defense of qualified immunity, the
defendant must establish that his acts did not violate a
constitutional right or, if a violation was shown, that the right
was not clearly established at the time of the incident.   <u>See</u>
<u>Pearson</u>, 555 U.S. at 232-33 (setting forth qualified immunity
test and holding that a court need not consider the questions in
any particular order).

     To evaluate whether a right is clearly established, the

court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).  The analysis focuses on cases from the Supreme Court and the Second Circuit.  See Williams v. Greifinger, 97 F.3d 699, 706 (2d Cir. 1996).

Here, the court has determined that genuine issues of material fact exist as to what occurred during the incident at issue.  Thus, the court cannot, at this time, determine whether a reasonable correctional officer would understand that his conduct was unlawful.  Therefore, the defendants' motion for summary judgment on the basis of qualified immunity is being denied.

IV.  **Conclusion**

The defendants' motion for summary judgment [**Doc. #68**] is hereby **GRANTED** in part.  The motion is granted as to all claims against defendants Quiros and Lajoie and also as to the claims for retaliation and harassment.  The case will proceed to trial on the remaining claims, including those claims not addressed in the defendants' motion.

It is so ordered.

Signed this 26th day of September, 2012 at Hartford, Connecticut.

_____/s/_____
Alvin W. Thompson
United States District Judge

18